IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01972-MEH-PAC

ALL STATES SHUTTLE, LLC d/b/a/ ALL STATES SHUTTLE, *et al.*,

    Plaintiffs,

v.

GREGORY E. SOPKIN, *et al.*,

    Defendants.

_____

**ORDER ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**
_____

**Entered by Michael E. Hegarty, United States Magistrate Judge**.

Defendant filed a Motion to Dismiss Amended Complaint (Docket #70). The Motion is fully briefed, and oral argument would not materially assist the Court in adjudicating it. For the reasons stated below, the motion is **granted in part** and **denied in part without prejudice.**

**I.    RELEVANT FACTS**

Plaintiffs are individuals and companies that provide shuttle service to and from the Denver International Airport. Their litigation history is a long and varied one.

Beginning in 1999, the Colorado Public Utilities Commission ("PUC") issued a series of penalty notices to several carriers which held Federal Motor Carrier Safety Administration certificates,[1] alleging that they were conducting extensive intrastate business without providing the

---

[1] The Plaintiffs have federal certificates issued by the Federal Motor Carrier Safety Administration which authorize transportation services along certain interstate routes. Each certificate authorizes the carrier "to provide intrastate passenger transportation service under this certificate *only* if the carrier also provides substantial regularly scheduled interstate passenger transportation service on the same route."

regularly scheduled interstate services, as required by those certificates.[2]  While review of those penalty notices was still pending in state court, a group of four carriers (not the Plaintiffs here) filed suit in federal court against the PUC and other defendants, seeking declaratory and injunctive relief. In the state court action, the Colorado Supreme Court upheld the PUC's jurisdiction over any carrier transporting passengers in intrastate commerce, affirmed the PUC's imposition of fines against carriers in that action, and rejected the PUC's federal preemption and jurisdictional arguments. *Trans Shuttle, Inc. v. Public Utility Comm'n*, 89 P.3d 398, 404-06 (Colo. 2004).  While the state case was pending, this Court dismissed the federal action based on abstention grounds, and the United States Court of Appeals for the Tenth Circuit affirmed.  *Trans Shuttle, Inc. v. Public Utility Comm'n*, 24 Fed. Appx. 856 (10th Cir. 2001).

After the Colorado Supreme Court's decision in *Trans Shuttle, Inc.*, the PUC, on August 16, 2004, sent a letter to the thirteen Plaintiffs in this action, describing the decision and stating that "the PUC intends to go to court to ask for an injunction to halt the operations of any motor carrier transporting passengers to and from Denver International Airport (DIA) on an intrastate basis . . . without actual, substantial and bona fide interstate operations in full compliance with the carrier's federal certificate."  The PUC also stated its intention "to go to court to ask for an injunction against" the Plaintiffs unless they provided "proof to the PUC of its 2004 for-hire interstate passenger transportation operations . . . [within] 30 days from the date of this letter."  The Plaintiffs filed this lawsuit after receipt of that letter.

---

[2]Under Colorado law, any carrier operating a motor vehicle for purposes of transporting persons on public highways in intrastate commerce must first obtain a certificate of public convenience and necessity (CPCN) from the PUC.  Colo. Rev. Stat. § 40-10-104(1).  None of the Plaintiffs obtained CPCNs.

This suit was originally filed on September 23, 2004, against the PUC and its three commissioners in their official capacities. The Plaintiffs sought to enjoin the PUC from taking enforcement action against them for failure to obtain a certificate of public convenience and necessity issued by the state, under two legal theories: First, that certificates granted to each Plaintiff by the FMCSA authorized them to provide transportation services, thus preempting contrary state law requirements and preventing PUC from having jurisdiction to determine whether they were in compliance with their federal certificates; and second, that the PUC had threatened enforcement action against the Plaintiffs based on the Plaintiffs' minority or foreign-born status, in violation of the Equal Protection Clause of the Fourteenth Amendment. The Plaintiffs sought declaratory and injunctive relief to prevent the PUC from going to court as threatened in its letters. They did not seek money damages.

On December 17, 2004, this Court dismissed this action on jurisdictional grounds, under the "*Rooker-Feldman* doctrine" (a reference to *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).[3] This Court interpreted the current lawsuit as an attempt to void the Colorado Supreme Court's *Trans Shuttle* decision, although only one Plaintiff in the lawsuit at that time, Mo's Shuttle, had been a plaintiff in the state court case. In reversing, the Tenth Circuit held that the doctrine could not be applied against nonparties to the prior judgment. It also held that even as to parties to the prior judgment, the doctrine applies only when the injury alleged by the plaintiffs was caused by the state court judgment, and in this case, if Plaintiffs

---

[3] The *Rooker-Feldman* doctrine "precludes federal district courts from effectively exercising appellate jurisdiction over claims 'actually decided by a state court'" and claims 'inextricably intertwined' with a prior state-court judgment." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1234 (10th Cir. 2006) (quoting *Kenmen Eng'g v. City of Union,* 314 F.3d 468, 473 (10th Cir. 2002)).

prevailed on their request for prospective relief, it would not undo the penalties imposed by the state court decisions. In the present case, the Plaintiffs seek relief based on the PUC's conduct in 2004, not on the 1999 actions.

Finally, the appellate court found that the fact that a decision in this Court finding a lack of PUC jurisdiction over the Plaintiffs would conflict with the Colorado Supreme Court's decision holding that the PUC did have such jurisdiction, "should not be alarming," 441 F.3d at 1238, because federal court decisions often conflict with state court decisions on the same issue.

After remand to this Court, on May 16, 2006, Plaintiffs filed their Amended Complaint. Their First Claim seeks declaratory and injunctive relief concerning the PUC's alleged violation of federal law. The Second Claim alleges a violation of their civil rights (without any further clarification of what rights) and presumably seeks declaratory and injunctive relief as well. The Third Claim also alleges a violation of civil rights in the nature of procedural due process, because Plaintiffs do not have any notice of what their burden would be (to establish substantial regularly scheduled interstate transportation service) at any hearing on the PUC's potential charges. The Fourth Claim alleges a violation of civil rights based on disparate treatment of Plaintiffs because they are minorities or are foreign-born. Jurisdiction is alleged under 42 U.S.C. § 1983. There is no claim for damages. The Defendants have moved to dismiss on the various grounds described below.

**II.   ANALYSIS**

　　A.   <u>Abandoned Claims</u>

Plaintiffs have conceded that claims against the PUC should be dismissed because of Eleventh Amendment immunity. Thus, Defendants' Motion is granted as to the PUC, and it is dismissed from this action. However, the Commissioners in their official capacities are amendable to suit. *Hornsby*

*v. Jones*, No. 05-5201, 2006 WL 1728022, *1 (10th Cir. June 26, 2006) (holding that "suits seeking prospective injunctive or declaratory relief against state officers, are not barred by the Eleventh Amendment") (citing *Cornforth v. University of Okla. Bd. of Regents*, 263 F.3d 1129, 1132 (10th Cir. 2001)).

### B. Lack of Subject Matter Jurisdiction

Defendants contend that because (1) this action is a collateral attack on the Colorado Supreme Court's *Trans Shuttle* decision, and (2) the Federal Motor Carrier Safety Act ("FMCSA") does not confer jurisdiction, this Court must dismiss this case. Concerning the former, Plaintiffs counter that the Tenth Circuit in this case rejected the "collateral attack" bar and permitted this Court to issue a decision that might conflict with the *Trans Shuttle* court's opinion. The Court believes that the Tenth Circuit has conclusively permitted this Court to review the same issues presented in the *Trans Shuttle* case. As to the latter, Defendants contend that the FMCSA preempts the PUC only from regulating the scheduling of certificate holders or regulating charter bus transportation in any manner. Because the PUC is not regulating the Plaintiffs' schedules of service, and because the Plaintiffs are not charter bus providers, the FMCSA does not confer jurisdiction. Plaintiffs argue that under the language of the FMCSA, 49 U.S.C. § 14501(a)(1)(A), a state agency is precluded from attempting to discontinue or reduce service provided by a certificate holder. The Court agrees with Plaintiffs. The "charter bus" provision under § 14501(a)(1)(C) is irrelevant, because Plaintiffs are proceeding under (A).

### C. Failure to State a Claim

As noted above, Plaintiffs assert four claims against Defendants. As to claims one and two, for which declaratory and injunctive relief are sought, Defendants allege that a permanent injunction against them is unavailable to the Plaintiffs, because circumstances confronting the PUC regarding

Plaintiffs' operations may change from time to time, and it is impossible to foreclose all situations in which the PUC may have jurisdiction to bring some sort of enforcement action against the Plaintiffs. Further, Defendants allege that the letter sent to the Plaintiffs which warns them of legal action is insufficient to create a justiciable case or controversy. They contend that the letter was "advisory" and "not sent out as an official act of the PUC." Motion at 14. Defendants also allege that the Defendant individual commissioners did not make any threats against the Plaintiffs; only the Director of the PUC sent the offending letters.

The Court believes that the letter at issue here creates a ripe case or controversy as to claims one and two, because it was sufficiently threatening and, further, the PUC had previously pursued action against carriers providing service to DIA. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, (10th Cir. 1996) (holding that MLBPA's "cease and desist" letter threatening pursuit of "full legal remedies," coupled with MLBPA's past history of filing suit, met "case or controversy" standard); *RSE Cellular, Inc. v. New-Cell, Inc.*, 213 F.3d 643 (Table), 2000 WL 285372 (9th Cir. Mar. 15, 2000) (holding that "cease and desist letter" threatening an infringement action created a case or controversy, particularly when requiring the plaintiff to wait for the threatened action to be filed would be prejudicial); *Marine Equip. Management Co v. United States*, 4 F.3d 643, 647 (8th Cir. 1993) (holding that letters threatening legal action satisfy the case or controversy requirement if there is a substantial probability of future claims). What is required is a "reasonable apprehension" of impending litigation. *Cardtoons, L.C.*, 95 F.3d at 966. That has been established here, especially considering the prior proceedings initiated by the PUC. Moreover, at least for purposes of a motion to dismiss, Plaintiffs have adequately alleged that they would be

severely prejudiced absent the Court's exercise of jurisdiction in this case.[4]

As to claim three, Defendants contend that they are factually correct in their assertion that Plaintiffs are not engaging in substantial regularly scheduled interstate commerce (which violates their federal certificates) and, therefore, Plaintiffs cannot state a violation of their constitutional rights. The Court believes that absent some factual allegation by Plaintiffs that they *do in fact* engage in interstate transportation, an allegation that is completely lacking in the Amended Complaint, the Plaintiffs' claim three fails to state a claim on which relief can be granted. Plaintiffs only make the following statement: "Each of the Plaintiffs are . . . a common carrier of passengers . . . between Denver International Airport and Points in the State of Colorado and all intermediate points. . . ." Amended Complaint at ¶ 12. According to the American Heritage Dictionary, "intermediate" means "[l]ying or occurring between two extremes or in a middle position or state." Thus, Plaintiffs merely allege that they travel between Denver International Airport and other points in Colorado. They do not in fact allege any travel outside the State of Colorado (although they may be alleging that use of interstate highways or transportation of persons who may be engaged in interstate travel is, legally, interstate transportation).

In any event, as Defendants point out in their Motion to Dismiss, an analysis of whether Plaintiffs are complying with the terms of their certificates will rely on decisions by the Interstate Commerce Commission or its successor, the Surface Transportation Board. These decisions provide both the PUC and the Plaintiffs with sufficiently clear standards to satisfy the requirements of due

---

[4]Of course, a "case or controversy" must exist at all stages of federal review, *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990), but at the present time, Defendants have not disavowed an intent to enforce their alleged authority to enjoin Plaintiffs' shuttle service if the Plaintiffs are not engaging in substantial interstate transportation.

7

process. Further, Plaintiffs already have notice of the manner in which their conduct will be judged, based on prior similar proceedings described in the Colorado Supreme Court's *Trans Shuttle* opinion. The Court finds that the procedural due process requirements of notice and an opportunity to be heard are established here.

As to claim four, Defendants argue that Plaintiffs have failed to plead any facts supporting a claim of constitutional violation based on minority status or national origin. Plaintiffs did not address claim four in their Response. Plaintiffs have made only a conclusory allegation that each of them are, or are owned by, a minority or a person of foreign birth, and thus, the Defendants have violated their constitutional rights. Plaintiff has the burden of pleading *some* facts showing a nexus between their race/national origin and the acts of Defendants; "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 345 (4th Cir. 2006) (holding that conclusory allegation that plaintiff is a racial minority and that his race was a motivating factor for his termination is insufficient when his complaint contains for supporting factual allegations) (citing cases); *Borkins v. United States Postal Serv. Employees*, 97 Fed. Appx. 32, 35 (6th Cir. 2004) (holding that bare allegations that defendants discriminated against plaintiff based on handicap cannot withstand dismissal without pleading some facts); *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985) (mere allegation that plaintiff is black and defendant violated his rights is insufficient to state a claim); *Davis v. Friendly*, 747 F. Supp. 451, 453 (N.D. Ill. 1989) ("A mere conclusory allegation of intentional discrimination is insufficient."). The Court does not believe that the Amended Complaint satisfies this minimal burden, and claim four should be dismissed.

Thus, the Court is left with these issues: Can a state regulatory authority make a determination

concerning whether the holder of a certificate issued by the FMCSA is complying with the terms of that certificate as far as the provision of "substantial regularly scheduled interstate passenger service" is concerned? If the state authority may make such a determination, and if the state authority determines that the terms of the certificate are being violated, can the state authority enjoin Plaintiffs from providing shuttle service based on violation of state law? The answers to these questions involve issues of federal preemption as well as primary jurisdiction. Further, the Court is concerned with the issue of whether the Plaintiffs should be barred from using preemption and primary jurisdiction as defenses to a motion to dismiss, if the facts show (or would show) that Plaintiffs are not *in fact* providing substantial regularly-scheduled interstate passenger service along the same lines as intrastate service. In other words, it is unclear to the Court whether Plaintiffs are even alleging that they provide substantial interstate service; or whether they are using their certificates as an absolute shield, claiming that the mere possession of a current certificate is sufficient, and that neither the Defendants nor the courts are permitted to probe the Plaintiffs' compliance with the terms of the certificates. The Court believes that the current record is not sufficiently developed to rule on these issues. Moreover, it is apparent to this Court that the only factual issue that remains is whether Plaintiffs actually transport any passengers along any routes outside of Colorado. If the Plaintiffs do not, then only legal issues (which may include whether the intrastate transporting in which Plaintiffs engage actually constitutes interstate transportation under the law) remain in this case, and the case may be decided on further briefing on issues such as, but not limited to:

> 1. Can a state regulatory authority make a determination concerning whether the holder of a certificate issued by the FMCSA is complying with the terms of that certificate as far as the provision of "substantial regularly scheduled interstate passenger service" is concerned?

2. If the state authority may make such the determination of paragraph 1, and if the state authority determines that the terms of the certificate are being violated, can the state authority enjoin Plaintiffs from providing shuttle service based on violation of state law?

3. Should the Plaintiffs be barred from using preemption and primary jurisdiction as defenses against Defendant's jurisdictional challenges, if Plaintiffs are not *in fact* providing substantial regularly-scheduled interstate passenger service along the same lines as their intrastate service?

4. In contending that Plaintiffs are complying with their federal certificates, do Plaintiffs actually provide passenger transportation outside of the State of Colorado, or are Plaintiffs relying solely (a) on intrastate transportation of passengers along interstate roads, and/or (b) intrastate transportation of passengers who are traveling interstate?

5. Is mere possession of a current certificate under the FMCSA sufficient to preempt state regulation of the carrier?

## III.  CONCLUSION

For the reasons stated above, it is **ORDERED** that Defendants' Motion to Dismiss [Filed June 30, 2006; Docket # 70] is **granted in part** and **denied in part without prejudice** as follows:

A. Defendant Colorado Public Utilities Commission is dismissed from this case and is to be removed from the case caption.

B. Claim Three is dismissed.

C. Claim Four is dismissed.

D. Claims One and Two remain.

It is further **ORDERED** that a status conference is hereby scheduled in this matter for November 2, 2006, at 9:00 a.m. Due to a proposed, but as yet unscheduled, relocation of the Chambers for Magistrate Judge Hegarty, the parties are directed to contact Chambers at 303-844-4507 no later than ten (10) days prior to the conference to find out the exact physical location of where this conference will be held. The conference will be held either in Courtroom A-601 on the

sixth floor of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado, or in new chambers space which will be in the Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado.  At this conference, the Court will discuss with the parties the nature and status of the case in light of this ruling (to include the potential briefing issues posited by the Court above), the timing for filing any motions, and what discovery, if any, will be needed in this matter.

Finally, it is hereby **ORDERED** as follows:

A. The parties are directed to provide a copy of this Order to counsel for the United States Department of Transportation and the Surface Transportation Board for the agency's consideration to participate as *amicus curiae*.

B. The Clerk's Office is directed to serve a copy of this Order on the United States Attorney for the District of Colorado.

Dated at Denver, Colorado, this 19th day of September, 2006.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge